Argued October 29, 1965, affirmed January 26, 1966

# STATE OF OREGON *v.* GILMORE

410 P. 2d 240

*Paul D. Schultz,* Oregon City, argued the cause for appellant. With him on the brief was Harry A. Harris, Oregon City.

*James R. Carskadon, Jr.,* Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief were Roger Rook, District Attorney, and Jack F. Olsen, Deputy District Attorney, Oregon City.

Before McAllister, Chief Justice, and Perry, Denecke, Holman and Schwab, Justices.

DENECKE, J.

The defendant was charged with assault and robbery while armed with a dangerous weapon. ORS 163.280. His defense was insanity. He was found guilty and appeals.

I

On July 2, 1963, a probate court found the defendant to be mentally ill and committed him to a state

institution. He was discharged from such institution on July 16, 1963, readmitted on July 19, 1963, and discharged again on August 23, 1963. The crime charged was allegedly committed on September 21, 1963. Immediately after indictment he was examined and on October 11, 1963, he was found to be mentally incapable of assisting in his defense. On February 24, 1964, he was found to be mentally capable of assisting in his defense. He was tried, convicted and sentenced in March 1964.

The trial court admitted into evidence the commitment order by the probate court of July 1963. It refused to admit the order of October 11, 1963, finding that he was mentally incapable at that time of assisting in his defense. This ruling is assigned as error.

■ This state has the *M'Naghten* rule incorporated in a statute. ORS 136.410; *State v. Garver,* 190 Or 291, 298, 225 P2d 771, 27 ALR2d 105 (1950). Under that rule, insanity is defined as the lack of ability to know the nature or quality of the act done or to distinguish between right and wrong in regard to that act. The statutory criteria under which defendant was committed by the order refused admission into evidence is: "* * * insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense * * *." ORS 136.150. The *M'Naghten* rule and this statute are not defining the same degree or kind of mental derangement. It was for this reason that the trial court refused to admit the October commitment order.

■ The question is one of relevancy. The crime was committed 20 days before the adjudication; therefore, in point of time the evidence is relevant. Whether or not the defendant was "insane" is a very difficult question to be answered. Insanity is an elusive con-

cept. The evidence provided for the jury is usually, as it was here, the opinions of the experts called by the defendant that the defendant could not tell the difference between right and wrong, and the opinions of the experts called by the state that the defendant could tell the difference between right and wrong.[1] With the issue and the evidence so incapable of precise measurement, any finding on any aspect of the defendant's mental condition would be relevant and of assistance to the jury in reaching its most difficult decision.

*State v. Garver,* supra (190 Or at 308-309), reached such a conclusion. There had been an adjudication of defendant's insanity prior to the commission of the alleged crime. The same distinction was made that is advanced here: "* * * the type of insanity for which one may be committed to the State Hospital for the Insane is not necessarily the same type of insanity which relieves a person from the consequences of committing an unlawful act." 190 Or at 308. This court commented: "* * * the state quite correctly says in its brief: 'That such adjudication may be considered as evidence of the defendant's ability [i.e., inability] to determine the difference between right and wrong at the time charged, but only as evidence, has been well established in many of the several jurisdictions.' * * *" 190 Or at 309.

■■ We hold that the trial court should have received the October eleventh order of commitment.

The state contends that if this was error it was harmless because the fact of commitment was made known to the jury in the hypothetical questions asked

---

[1] They were not asked whether the defendant knew the nature and quality of his act.

of the experts and in other testimony. We agree that the error was not prejudicial.

The facts that he was found incapable of assisting in his own defense and committed to the hospital in October 1963 were facts stated in the hypotheticals. A psychiatrist called by the defense testified to these facts without objection. The state's medical witnesses testified to the recommitment and that during such commitment the defendant was transferred to the criminally insane ward of another state institution. And most significantly, the defendant's counsel in closing argument, without objection, pointed out that in October the defendant had been found unable to assist in his defense and, therefore, was committed to a state institution.

## II

The defendant requested the following instruction:

"I instruct you that when permanent, chronic or continuous insanity is once proved to have existed at some time prior to the alleged crime, it will be presumed to have continued and to have existed at the time of the alleged crime unless the contrary is proved *and, in this connection, you may take into account any prior adjudication of permanent, chronic or continuous insanity if you find there was such adjudication.*" (Emphasis added.)

The court gave the requested instruction except for the italicized portion. The defendant claims the failure to give the italicized portion is error. The entire requested instruction was approved in *State v. Jensen,* 209 Or 239, 274, 289 P2d 687, 296 P2d 618, appeal dismissed 352 US 948, 77 S Ct 329, 1 L ed2d 241, rehearing denied 352 US 990, 77 S Ct 388, 1 L ed2d 369 (1957).

■ The trial court's failure to include the italicized portion was not error. It is not necessary for the trial court to call to the jury's attention evidence that may be considered upon an issue, particularly where, as here, the connection would be apparent to lay jurors.

## III

The defendant assigned as error the court's refusal to give the following requested instruction:

"I instruct you that criminal intent is a necessary element of any crime, and one who has not the mental capacity to have a criminal intent cannot be guilty of a crime. If you find that the defendant did not have the mental capacity to have a criminal intent, then the defendant cannot be found guilty."

The trial court did give the traditional *M'Naghten* insanity instruction, the crux of which was:

"Insanity, to excuse a crime, must be such a disease of the mind as dethrones reason and renders the person incapable of understanding the nature and quality and consequences of his act or of distinguishing between right and wrong in relation to such act. * * *"

The fallacy of defendant's contention is shown by the basic premise stated in his brief: "Criminal intent and insanity are separate concepts of the law * * *." The *M'Naghten* rule, certainly the second portion of it, the ability to distinguish right from wrong, is about criminal intent. "Insanity" is a defense because an "insane" person does not have the mental capacity to form the criminal intent.

"The logic of the insanity plea in this connection is simple enough and it was clearly restated by Coke: the implication of *mens rea* [criminal intent] is *mens sana* [sound mind]; if the defendant is 'insane' the requisite of criminal intent is not appli-

cable. * * *" Hall, Principles of Criminal Law (1947), 478.

"* * * The *M'Naghten* judges did the best they could under the circumstances to describe the psychological parts of the two halves of the crime concept to which medical evidence of disease of the mind can refer. They described the psychological aspects of the capacity to *act* as knowing 'the nature and quality of the act.' And they described the *mens rea,* or criminal intent, as 'knowing the wrongfulness of the act.' In using this language they employed the same terminology they had used for any other substantive defense to crime, for every such defense can refer only to either of the two halves of the crime concept, i.e., the defendant either did not commit the requisite criminal act, or did not have the requisite criminal mind." Mueller, *M'Naghten Remains Irreplaceable: Recent Events in the Law of Incapacity,* 50 Geo L J 105, 106 (1941).

■ The failure to give the requested instruction was not error because the subject matter had been covered by the *M'Naghten* instruction.②

Affirmed.

---

② The defendant's present contention should not be confused with an attempt to invoke the partial-responsibility doctrine in a homicide case. This doctrine is a recognition that mental derangement short of "insanity" can be relevant upon the issue of whether the defendant could form the intent requisite for conviction of certain degrees of homicide. State v. Padilla, 66 NM 289, 347 P2d 312, 78 ALR2d 908 (1959); People v. Gorshen, 51 Cal2d 716, 336 P2d 492 (1959). See State v. Jensen, supra (209 Or 239). This contention was advanced in State v. Ottman, 242 Or 190, 408 P2d 211 (1965), but not decided.