Argued June 24, affirmed July 22, reconsideration denied
August 22, petition for review denied September 4, 1974

STATE OF OREGON, *Respondent, v.* BRUCE
LEE DePUE (No. C 73-09-2788), *Appellant.*

524 P2d 562

*Gary D. Babcock,* Public Defender, Salem, argued
the cause and filed the brief for appellant.

*Timothy Wood,* Assistant Attorney General, Salem,
argued the cause for respondent. With him on the

brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction of murder. ORS 163.115. The only question raised in the appeal is whether the court erred in refusing to give a requested instruction in which the defendant attempted to explain ORS 161.295, "Effect of mental disease or defect,"[1] in terms of "emotional" and "intellectual" knowledge as a basis for criminal responsibility.

The defendant, who did not testify, had admitted to police the fatal shooting of the victim whom he had picked up late at night near a phone booth on a street in Portland. There was evidence from which the jury could have believed he asked her to have sexual relations with him, and when she refused he shot her seven times with a .22 caliber revolver and left her body in the parking strip by the street. He claimed that he was under the influence of amphetamines at the time and that he had used amphetamines for several years prior to the homicide. His statement to the police included a claim that at first he did not think the revolver was loaded.

---

[1] ORS 161.295 provides:

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971 [includes this statute], the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

One psychiatric expert testified that use of amphetamines can cause mental abnormality and that defendant had an inability to restrain his own aggressiveness resulting from organic thought disorders and a state of psychosis. Two other experts, one a state clinical psychologist and the other a state psychiatrist, testified that defendant was not suffering from a mental disease or defect which substantially impaired his capacity to conform his conduct to the requirements of law or to appreciate the criminality of his act. The defendant had been seen by the state clinical psychologist about ten years earlier when he had been referred to the state hospital for evaluation while an inmate at MacLaren School for Boys. The experts all related a long-standing history of violent, aggressive behavior on the part of defendant, who is 27 years old.

The requested instruction was:

"A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"To be guilty of a crime, an offender must be emotionally as well as intellectually aware of the significance of his conduct. In a psychiatric sense it is possible for a person to 'know' intellectually what he is doing but not to 'know' what he is doing *emotionally,* and if *either* of these two levels of 'knowledge' is missing, a person is not responsible under our law.

"Our law does not require a 'complete' or 'total' destruction of the normal capacities of the defendant in order for the defendant to not be responsible for his criminal conduct. Rather, our law requires only a 'substantial' incapacity of defendant."

An instruction regarding defendant's burden of proof

on his plea of mental defect was not included in this instruction and for this reason the state claims it was defective. The defendant did submit an accompanying requested instruction which properly defined his burden of proof, and we consider the request sufficient in this regard.

The trial judge instructed the jury in the precise language of the statute (*see* n 1).

We considered, in banc, the subject of a defendant's intellectual and emotional awareness of the significance of his conduct in *State v. Dyer,* 16 Or App 247, 514 P2d 363, 518 P2d 184, Sup Ct *review denied,* decided on January 21, 1974. The trial of the case at bar commenced on January 7, 1974, and concluded before *Dyer* was decided. The trial judge did not have the benefit of that opinion. We noted there that "the court instructed the jury as to both aspects of criminal responsibility in the words of the statute." While instructions were not the direct subject of our decision in that case, the quoted statement above was tacit approval of a mental defect instruction couched in the language of ORS 161.295 in a case like this.

Furthermore, in *Dyer* we discussed the mental defect concept which was adopted in ORS 161.295 by the 1971 Legislature. Our discussion involved an examination of the rule pronounced therein from the standpoint of receiving evidence as to emotional as well as intellectual cognition of an act which a defendant has committed. Our discussion thereof concluded:

> "While we are hard put to articulate the differences between intellectual and emotional understanding or appreciation of criminality—and there is no need to enter that semantic thicket in this

case—the definitions found in [*State v. Gilmore,* 242 Or 463, 410 P2d 240 (1966)] and in ORS 161.295 (1) each allow testimony as to both levels of cognition and the two definitions are therefore equivalent to each other in meaning and in function." 16 Or App at 259.

The experts—psychiatrists and a psychologist—in this case were thoroughly examined with reference to the defendant's emotional and intellectual appreciation of what he did. We consider it unnecessary for the trial judge to seek to explore, explain or define the concepts to the jury as the defendant would have had him do in the second paragraph of the requested instruction.[2] The judge was not the expert—the witnesses in this case were. The judge would come close to the Oregon proscription against commenting on the evidence if he undertook an instruction incorporating comments about psychiatric concepts of intellectual and emotional knowledge.

Affirmed.

THORNTON, J., dissenting.

For the reasons expressed in my dissenting opinion in *State v. Dyer,* 16 Or App 247, 518 P2d 184, Sup Ct *review denied* (1974), I respectfully dissent.

---

[2] In Comment, *A Standard Jury Instruction for Oregon's Criminal Responsibility Test,* 52 Or L Rev 285 (1973), the author discusses the possible need for going beyond the words of the statute to instruct the jury in the meaning of the insanity concept adopted in ORS 161.295 from the Model Penal Code of the American Law Institute. The Comment includes a proposed uniform jury instruction. Our mention of it here does not mean either that we approve or disapprove of it although we recognize cogency in the author's argument for something more than the bare words of the statute in a jury instruction. We note that in the proposed instruction the author would rule out a mental condition which developed in defendant's mind because of "external causes or foreign substances incorporated into the body * * *." In the case at bar defendant claims that his mental defect was brought about by his ingestion of a foreign substance—amphetamines.